IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v. ) | |
| ) | Crim. No. 1:12-CR-135-LO |
| ) | |
| JAMES OWEN ) | |
|     Defendant. ) | |

**POSITION OF THE UNITED STATES AS TO SENTENCING**

The United States has reviewed the Probation Office's presentence report in this matter, which provides a Sentencing Guideline range of 97 to 120 months imprisonment. After recently discussing the two point distribution enhancement with defense counsel, the United States believes the distribution enhancement is not appropriate in this case and the resulting Guideline range should be 78-97 months incarceration. As described more fully below, the United States believes that a consideration of the applicable sentencing factors pursuant to 18 U.S.C. § 3553 warrants a sentence within the sentencing guideline range of 78-97 months imprisonment and a lifetime of supervised release.

**A. NATURE AND CIRCUMSTANCE OF THE OFFENSE**

In November 2011, an FBI undercover law enforcement officer ("UC Agent") used a law enforcement tool to review a list of user names and Internet Protocol ("IP") addresses that appeared to be sharing, via a peer-to-peer (P2P) file sharing network, child pornography images and/or videos. The law enforcement tool indicated that a specific computer with IP address 76.114.203.248 (hereinafter "Subject IP") was online sharing child pornography images and/or

videos on November 9, November 10, and November 29, 2011.  A review of the names of the files being shared contained terms indicative of child pornography, including "preteen," "pedofilia," and "pthc."

On November 9, 2011, the UC Agent connected directly to the computer with the Subject IP address and downloaded seven videos containing child pornography.  One video titled "(Pthc) Tara brand New.AVI" depicts an adult male engaged in anal sex with a prepubescent female.  He later inserts a phallic object into her anus and proceeds to continually remove and insert the object for a short period of time.  Later in the video the prepubescent child performs oral sex on the adult male.

On November 29, 2011, the UC Agent connected directly to the computer with the Subject IP address and downloaded two videos containing child pornography.  One video titled "Pedo (Pthc) – Compilation Cumshots, Creampies (Hussyfan) (pthc) (r@ygold) (babyshivid).mpg" depicts a naked adult male masturbating above the face of a naked female child who appears to be prepubescent.  The male ejaculates on the child's face and into her mouth.

After learning that the IP address was assigned to Comcast, FBI sent an administrative subpoena for subscriber information connected to that IP address on the relevant dates and times.  An administrative subpoena return from Comcast revealed that the Subject IP Address during the undercover sessions was assigned to Defendant James Owen at his place of residence in Woodbridge, Virginia, within the Eastern District of Virginia.

Based upon the foregoing information, FBI agents executed a search warrant on Defendant's residence on or about December 16, 2011.  Defendant was present during the execution of the search warrant and agreed to speak with FBI agents. During the interview,

Defendant admitted to downloading child pornography. Defendant also admitted to using peer-to-peer software programs Limewire and Frostwire, although he later stated that he did not realize he was sharing with others on the network.1 Pursuant to the search warrant, agents seized several computer devices.

Forensic analysis was conducted on his devices, revealing over 15,000 images and 750 videos of child pornography. Forensic analysis of the computer devices revealed that Defendant downloaded and saved child pornography into various electronic folders including "Users/jimowen1/LimeWire/Saved" and "Users/jimowen1/Misc/Frostwire/Download." Forensic analysis also revealed numerous text files containing stories about the sexual abuse of children, including fantasies concerning incest between a father and young daughter. The text files were also recovered from Defendant's electronic folders.

Defendant's collection of child pornography involved babies, toddlers, and prepubescent children. Several videos and images contained violent, sadistic, and masochistic conduct. For example, Defendant had an image of child pornography depicting a knife being held near a prepubescent child's exposed vagina. The child's chest and torso were covered with red writing, including the phrases, "I'm a slut" and "hurt me." Defendant also saved several still images titled "BabyShi-Helpless." The series of still images depict a naked female toddler with her ankle tied up with rope leaning over a small table, exposing her buttocks. In one image, a naked adult male digitally penetrates her anus. In a subsequent image, the adult male inserts his penis into her anus. In a later image, the adult male ejaculates on her buttocks.

---

1 It is possible for users to change their settings on Limewire and Frostwire so that their materials are not being shared with others on the network. It is unclear whether Owen attempted to change his settings but the United States will credit his statement that he did not realize he was sharing with others for purposes of the distribution enhancement.

Defendant also saved one video file titled in part "(Pthc) (Vicky)-Pedofilia Part1-Suck.mpg" showing a prepubescent minor female known as "Vicky" performing oral sex on an adult male. "Vicky" is a minor victim known to law enforcement and the visual depictions of her sexual abuse were produced in Oregon and Washington. Forensic analysis of the computer devices also revealed various search terms used to obtain child pornography including "pthc vicky," "pthc stories," "childrensex," "slut pedo," and "Vicky's" real name.

### B. HISTORY AND CHARACTERISTICS OF THE DEFENDANT

While Defendant does not have prior convictions, he has admitted to possessing child pornography for the past ten years. Forensic analysis of his devices indicate he possessed child pornography as early as the 1990s. Moreover, as indicated in letters from probation to this Court, there have been troubling sexually explicit comments made by Owen to an occupant in his house, further demonstrating inappropriate sexual conduct.

### C. SERIOUSNESS OF THE OFFENSE, PROMOTION OF RESPECT FOR THE LAW, AND PROVISION OF JUST PUNISHMENT

Possession of child pornography is a serious offense that causes grave harm to the children depicted in the images. The videos possessed by Defendant depict prepubescent children subjected to sexual abuse by adults including sexual intercourse, oral sex, and masturbation. The harm to children depicted in child pornography was recognized years ago by the United States Supreme Court in New York v. Ferber, 458 U.S. 747, 758 (1982). In Ferber, the Supreme Court noted that, in the judgment of state and federal legislators, as well as authors of relevant literature, "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child." Ferber, 458 U.S. at 758 (citations omitted). The Ferber court also observed that the "[pornographic] materials produced are a

permanent record of the children's participation and the harm to the child is exacerbated by their circulation." Id. at 759 (citation omitted). Furthermore, the court stated:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt [the victim] in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography… It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions.

Id at 759 & n. 10 (citations omitted). See also Osborne v. Ohio, 495 U.S. 103, 109-10 (1990) (reaffirming Ferber in case involving possession of child pornography).

In 2002, the United States Supreme Court again acknowledged the harm to victims depicted in child pornography and observed that a new harm is caused each time the images are shared with someone different. See Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249 (2002). In Free Speech Coalition, the court noted that "as a permanent record of a child's abuse, the continued circulation itself would harm the child who had participated. Like a defamatory statement, each new publication of the speech would cause new injury to the child's reputation and emotional well-being." Id at 249.

Moreover, in rejecting defendants' claims that the "mere" receipt or possession of child pornography is a victimless crime, courts have noted at least three specific harms inflicted on the children depicted in the pornographic images:

> First, the simple fact that the images have been disseminated perpetuates the abuse initiated by the producer of the materials. [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation. The consumer who "merely" or "passively" receives or possesses child pornography directly contributes to this continuing victimization.

5

>Second, the mere existence of child pornography represents an invasion of the privacy of the child depicted. Both the Supreme Court and Congress have explicitly acknowledged that the child victims of child pornography are directly harmed by this despicable intrusion on the lives of the young and the innocent. The recipient of child pornography obviously perpetuates the existence of the images received, and therefore the recipient may be considered to be invading the privacy of the children depicted, directly victimizing these children.
>
>Third, the consumer of child pornography instigates the original production of child pornography by providing an economic motive for creating and distributing the materials…[T]here is no sense in distinguishing, as [Defendant] has done, between the producers and the consumers of child pornography. Neither could exist without the other. The consumers of child pornography therefore victimize the children depicted in child pornography by enabling and supporting the continued production of child pornography, which entails continuous direct abuse and victimization of child subjects.

United States v. Norris, 159 F.3d 926, 929-30 (5th Cir. 1998).

As described in the victim impact statements, the actual children depicted in the child pornography are greatly harmed by Defendant collecting such images and taking a perverse pleasure in the heinous sexual abuse they endured. One of the minor victims depicted in the videos possessed by Defendant is a young female known as "Vicky." "Vicky" was repeatedly raped and subjected to other forms of sexual abuse by her biological father when she was a prepubescent minor at the age of ten and eleven years old. In her letter to this Court, "Vicky" states:

>I live everyday with the horrible knowledge that many people somewhere are watching the most terrifying moments of my life and taking grotesque pleasure in them. I am a victim of the worst kind of exploitation: child porn. Unlike other forms of exploitation, this one is never ending. Everyday people are trading and sharing videos of me as a little girl being raped in the most

sadistic ways. They don't know me but they have seen every part of me. They are being entertained by my shame and pain.

My world came crashing down the day I learned the pictures of me being sexually abused had been circulated on the internet. …I wonder if the people I know have seen these images. I wonder if the men I pass in the grocery store have seen them. I feel totally out of control. They are trading around my trauma like treats at a party and it feels like I am being raped all over again by every one of them.

<u>See</u> Letters Attached to Presentence Report.

"Cindy," another victim of sexual abuse found in Defendant's collection, writes, in part:

Being sexually abused is something you never forget, no matter how hard you try. But when you have photographs of your abuse on the internet, presently being viewed by others, it makes it even more impossible to keep it in your past and move on from it. It is like the abuse is still happening. In those pictures of me, there is a girl, trapped there, saying "please rescue me." And instead of seeing a girl being used and abused in that picture or pictures, these men decide they would rather revictimize me by using the pictures for their own sick sexual desires, and trade them with others so they can do the same.

<u>See</u> Letters Attached to Presentence Report

A mother from the "Jan_Feb" series writes:

From 2002-2003 my daughter was abused repeatedly to produce images for the purpose of being traded/shared over the internet. Without a market to receive and trade those images, without the encouragement of those who wanted to acquire the images, I truly believe this abuse would not have occurred.

All those who trade these images and thereby create a demand for lurid and violent depictions of children are participants in the exploitation of my daughter. Each traded picture that placed a value on inventiveness, novelty, or cruelty played a role in egging on the abuse to even more vile acts.
…

> For more than a year, she suffered humiliation and torture while her pictures were being traded and her abuser practiced "improving" the product he was providing. Any one of the folks who acquired her picture could have reacted in a decent, human matter and contacted the police to let them know a helpless child was being tortured.
>
> …
>
> I can find no words to express the fury I feel at those who participate in this evil, or my scorn for any attempt to minimize the responsibility by feeble claims that the crime was "victim-less." My daughter is a real person. She was horribly victimized to provide this source of "entertainment." She is exploited anew each and every time an image of her suffering is copied, traded or sold. While the crime is conscienceless, it is hardly "victim-less."

See Letters Attached to Presentence Reports.2

As to additional sentencing factors for this court to consider, there is a strong need to promote respect for the law through an adequate punishment. As noted above, Defendant downloaded and possessed videos of children subjected to sexual abuse, re-victimizing each minor depicted therein with each viewing of the abuse they endured. As to a provision of just punishment, the United States submits that the applicable Sentencing Guideline range of 78 to 97 months incarceration is an appropriate punishment, along with a lifetime of supervised release.

**D. THE NEED TO DETER FUTURE CRIMES AND TO PROTECT THE PUBLIC**

Based on the nature of Defendant's crime and conduct, there is a compelling need to deter future similar conduct by him and other like-minded individuals with an interest in child pornography. There is also a strong need to stop the supply and demand in the child pornography market to protect all minor victims from being re-victimized through the repeated viewing of the sexual abuse they endured and to prevent new minors from being victimized for

---

2 Attorneys for the victims "Vicky," "Cindy" and "L.S' from the "Jan-Feb" series have submitted restitution requests. If Defendant does not reach an agreement on restitution as to each of the three victims, the United States requests ninety days to address the restitution issue with a hearing. See 18 U.S.C. § 3664(d)(5).

the camera. Defendant knew that children were being physically and sexually harmed yet he continued to seek it from the internet and possess it for at least ten years. Accordingly, the United States believes that the applicable sentencing guideline range of 78-97 months incarceration is an appropriate sentence, along with a lifetime of supervised release.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that Defendant be sentenced to a term of imprisonment of 78-97 months incarceration consistent with the Sentencing Guidelines and § 3553 factors. The United States also seeks a lifetime of supervised release.

Respectfully submitted,

Neil H. MacBride

UNITED STATES ATTORNEY

\_\_\_\_\_/s/_____
Maureen C. Cain (LT)
Special Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: (703) 299-3700
Fax: (703) 299-3980
Maureen.Cain2@usdoj.gov

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2012, I electronically filed the foregoing brief with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to:

Peter D. Greenspun, Esq.
3955 Chain Bridge Road, 2nd Floor
Fairfax, VA 22030


_____/s/_____
Maureen C. Cain (LT)
Special Assistant United States Attorney
Justin W. Williams U.S. Attorney's Building
2100 Jamieson Avenue
Alexandria, Virginia 22314
Tel: 703-299-3700
Fax: 703-299-3981
Maureen.Cain2@usdoj.gov