IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandra Division

UNITED STATES OF AMERICA      :
                              :
            -vs-              :      No.  1:12-CR-135-LO
                              :
JAMES OWEN                    :

## **POSITION OF DEFENDANT, JAMES OWEN, REGARDING SENTENCING**

### INTRODUCTION

Mr. Owen is currently before this Court for sentencing upon his guilty plea to a single count of possession of child pornography in violation of Title 18, U.S.C. § 2252A(a)(4)(B) which carries a sentence range of up to ten (10) years in prison and up to a $250,000 fine, as well as the potential for life-long supervised release.   There are also mandatory sex offender registry requirements and meaningful loss of civil liberties pursuant to this conviction.

On June 5, 2012, Mr. Owen entered a guilty plea to the stated offense, which was charged by information after the original charge of receipt of child pornography was initiated on April 10, 2010.  Mr. Owen has remained on pre-trial supervision and cooperated in every way with Paul Arnett regarding his supervision and Terrell Sewell regarding the preparation of his Pre-Sentence Investigation Report.  Mr. Owen has fully and completely accepted responsibility for his actions from his first contact with law enforcement on December 16, 2011, throughout the evaluations before and during the litigation process, and at the time of his plea before this Court.

Mr. Owen has been open and forthcoming about his history and the offense conduct with his probation officer, Terrell C. Sewell, Jr.  Additionally, family members have provided significant information to Mr. Sewell.  Hundreds of pages of supporting records and documentation have been provided as well confirming Mr. Owen's history and medical status.  The Court as well has support letters, updated information on Mr. Owen's medical status (to be filed under seal) and the forensic mental health evaluation (to be filed under seal) prepared by Anita L. Boss, Psy.D., ABPP, a well-established, respected, and Virginia Sex Offense Certified forensic psychologist.  Given all the Court has, it is respectfully suggested that this case is unique, and that the sentence likely to be requested by the government is not consistent with any realistic evaluation of the facts, let alone Mr. Owen's history and circumstances.

In this case, in light of the lack of criminal history, medical and mental health status, punishment within the community already suffered, the lack of any distribution or computer solicitation conduct, and consideration of all Title 18 U.S.C. 3353 factors, a supervised release disposition is not only requested, but is suggested to be the appropriate result.  While this requested result is a far cry from the guidelines range and what the government wants, it is what common sense and every consideration of mercy demands in this unique case. This 78 year old man has done wrong, but should not be in a position to die in prison.

## CASE HISTORY AND TIMELINE

The timeline of this litigation process is anything but typical.   This investigation was initiated by law enforcement, which discovered possible child

pornography possession by use of peer to peer network investigative techniques. The investigation moved slowly.  On December 16, 2011, a search of the Owen residence took place pursuant to a search warrant issued by this Court.   Mr. Owen was questioned extensively and admitted to maintaining a significant collection of adult and child pornography on his computer.  Mr. Owen answered every question put to him by the investigators, and the subsequent computer forensics analysis confirmed that his statements were true.  There was not then, and is not to this date, any evidence that Mr. Owen did anything beyond collect pornography, some legal and some not.  What is clear is that there was no distribution of child pornography, purchase of it, solicitation or reaching out to minors over the computer or otherwise, or related actions this Court has seen in other cases.

For months Mr. Owen and his counsel did not hear a word from the government until his arrest.  If there were any concerns, realistic or imagined, that Mr. Owen was a risk to the community and children, his arrest would have been prompt.  However, the parties involved allowed the matter to continue along without warning the community or requesting additional court-imposed supervision requirements.  That is because Mr. Owen posed no risk to the community, which was evident from the information uncovered during the investigation.  Nevertheless, Mr. Owen promptly and volitionally consulted with his pastor, engaged in a comprehensive sex offender mental health evaluation, and began individual and couples therapy.

What was not found in this thorough investigation is as important to consider as what was found.  The police investigation and computer forensics do **not** show:

- Affirmative searches for child pornography; or

- Chats or attempted chats with minors of any nature, let alone sexual; or

- Searches or other interest in sexual chat rooms of any nature, let alone seeking contact with minors over the internet; or

- Instant messages or internet chat programs with minors for any purpose, let alone sexual ones; or

- Current or ongoing reaching out to those who could lead him to child pornography, the purchase of it, or efforts to be at places where children would be at risk; or

- Any effort to obstruct justice or mislead the investigators in any way.

Irrespective of the facts, the government pursued with vigor the "receipt" indictment carrying a five year minimum mandatory sentence.  Eventually the government allowed a possession plea, but demanded a stipulation of guidelines and enhancements that bring a guideline range of 78 to 97 months.  The government seeks a sentence within that range.

<u>MR. OWEN'S BACKGROUND</u>

Mr. Owen is 78 years old.  He has no criminal record whatsoever.  He has been married for decades and has supported his children and grandchildren. He, with the help of his wife, Rosemarie Owen, provides the support for his granddaughters, as described in the PSR and the report from Dr. Boss, and has been a great financial aid to his sons and other family as needed.  He is now

before this Court in a predicament of unimaginable dimension. The PSR makes clear the contrast between this man's life trajectory and current situation.

Mr. Owen grew up in Missouri and his family background and upbringing are well described in the PSR and Boss report. They will not be reported here, except to summarize that Mr. Owen has been responsible and productive, and he has contributed to his personal, church, and professional communities since his teenage years. His only failure is not addressing a lifelong addiction to legal adult pornography that, with the advent of the internet, morphed during more recent years into also viewing and maintaining child pornography.

Mr. Owen was first titillated by adult pornography at an early age when he discovered pornographic magazines in his parents' home. The dark and seedy underbelly of the internet allows, and even entices, those who are lonely and suffering from depression and difficult family and social circumstances to "surf" the internet and easily find what is there, legal or not. This enticement eventually led to Mr. Owen's present circumstances, as his interest in legal pornography devolved into something criminal.

Since retirement, Mrs. Owen, the Owens' children, and others describe difficult circumstances for Mr. Owen and a change in his demeanor. Almost reclusive, the 40 year home he shared with his family is one step from being uninhabitable. It is filled with a life time of property, animals, and granddaughters, who make huge and intrusive demands on Mr. and Mrs. Owen, spending as much as $4,000 a month on their lifestyle. Counsel has seen countless credit card bills with dozens of charges from the girls at fast food

restaurants and pet and convenience stores.  The treatment Mr. and Mrs. Owen receive is as bad as it gets, with the Owens' supporting not only the granddaughters, but their live in boyfriends and menagerie of pets.

The financial challenges of supporting those who should be contributing to the household is bad enough.  Worse is the obscenity-laden treatment Mr. and Mrs. Owen receive from the other occupants of their home.  Messrs. Sewell and Arnett can confirm for the Court the awful house conditions, odors, and challenging health circumstances that are present.  Not only has Mr. Owen suffered with many declining health issues, but Mrs. Owen has battled with her own health issues.  Mr. Owen has to deal with that despite being unable to deal with his own emotional and mental health scars.

In the months leading up to and since Mr. Owen's arrest, Mrs. Owen noticed signs that Mr. Owen was becoming forgetful and did not remember things he was told.  He had become increasingly negative and even paranoid at times. The separation and isolation within the household and community became worse since his retirement, and Mr. Owen spent more and more time alone and on the computer.  It was there that Mr. Owen spent hours looking at news sites, handling financial affairs with online banking, and the like.  It is also there that Mr. Owen discovered the dark side of the internet and pornography—adult pornography—and eventually the peer-to-peer network system to view and download pornography.

As the Court is aware, while Mr. Owen's viewing of and maintenance of child pornography was wrong, and make no mistake he knows it was wrong

morally and legally, his involved in the world of child pornography was limited to possession – nothing more. For that Mr. Owen is a convicted felon, a sex offender to be scorned by many, and he will be on the sex offender registry. Many will assume he is an actual physical abuser of children, even though that is not true.

The Owen family circumstances are complex. Mr. Owen has been counseled to cut up the credit cards and stop the financial bleeding. Mrs. Owen cannot bear to cut off her granddaughters. The Owens have been counseled to kick out the boyfriends, or at least charge rent, to demand the removal of the animals, and to demand help with the cleaning up and maintaining the house. Again, Mr. Owen cannot do this alone, and Mrs. Owen feels she cannot make such demands. So, Mr. and Mrs. Owen suffer these unbelievable conditions and demands without apparent recourse or remedy.

Throughout, Mr. Owen has provided significant financial support to his children, despite all of them being adults. Mr. Owen has also assisted other family members in need of support over the course of his life. And, he is also the main financial support of the marital household.

Surely the victims – the children within the pornographic images and those close to them – must never be forgotten or the damage to them diminished. But, as to the immediacy of this situation, Mr. Owen has done all that can be expected. When the search took place last December, Mr. Owen was a lonely and isolated person who found the bottom of the internet barrel and had no one to turn to for help. He had lost his self discipline and viewed and stored child

pornography.  However, he told the police what he had and had not done without any filter.  At that time his health and mental health were in a steep and steady decline, yet out of all of this bad, good has come.

With support, Mr. Owen is doing far better in many ways.  He listened to and learned about what he had done, the victimization that stems from the viewing and maintaining of the digital pictures, and how he must appreciate the gravity of the offense.  For months he has been in intensive therapy with a Virginia sex offender certified psychologist exploring not only his current situation, but also what brought him here.  He is learning how to battle his demons, which he has not addressed since his youth, and how to be a better husband, father, and grandfather.

Mr. Owen, while still suffering a multitude of dangerous health issues up to the time of his plea which remain of concern, is working hard on his rehabilitation.  He is consulting with doctors and following their instructions.  A summary of his medical and medication issues will be filed under seal.  Mr. Owen has also been a perfect probationer.

The silver lining to all of this is the treatment Mr. Owens has undergone, which has showed him his flaws and how to address them.  For decades, Mr. Owen ignored the problems in his life.  Rather, he focused on providing care to all the other people who depended on him and asked him for his help.  But now, with treatment, Mr. Owen is conquering his own demons.

## THE PRE-SENTENCE INVESTIGATION REPORT GUIDELINES

The Probation Officer has concluded that Mr. Owen's guidelines are a net level of 30 with a range of 97 to 121 months. The various enhancements are not disputed, except for the U.S.S.G. 2.2(b)(3)(f) assessment for distribution. In the plea agreement outline of the guidelines and at the time of sentencing, the government will not seek this enhancement or assert any evidence of distribution. The PSR describes the objections to this by defense counsel, and the case asserted by the probation officer in the addendum is not consistent with what occurred in this case.

That said though, there is a reality to the enhancements in child pornography cases. There are few that do not include the use of a computer, sadism and/or masochism with pre-pubescent children and multiple images. Those items are the facts in most child pornography prosecutions, particularly in the instance of peer to peer networks, which essentially dump multiple images without discrimination. Therefore the guidelines are skewed by the very nature of the conduct, almost always very similar to the ranges in this case.

Mr. Owen is guilty of possession of child pornography and he acknowledges that. He makes no claim that he is not guilty. The only issue here is not the correctness of the calculated sentencing range, but rather the significance of such a weighty range in a case such as this. We respectfully submit that for all of the reasons submitted in this case, the Court ought to give little weight to the guidelines calculation. Examples of cases exhibiting far more aggravated collection efforts and larger collections maintained by offenders who

- 9 -

do not present the same history and current circumstances as Mr. Owen have been treated well below the Guidelines' recommendations.  These cases support the request for fashioning a sentence outside of the recommended range.

Beyond that, we argue below that Mr. Owen's sentence ought to be substantially lower, to the point of a house arrest and supervised release sentence, based upon the unique facts which underlie this conviction, upon his upstanding life of hard work and dedication to his family, upon his profound remorse, upon the magnitude of extra-judicial punishment that he will endure in the future, the imposition of this federal prosecution when the state system was addressing the conduct and consequences perfectly well, and upon the extraordinary low risk of recidivism here, all in addition to his age and poor health, and the advantage that will be taken of his wife in the event of incarceration.  All these factors lead to the conclusion that a sentence with specific and demanding supervised release requirements is sufficient to meet the goals of punishment set out in Title 18 U.S.C. Section 3553(a).

<u>UNITED STATES v. BOOKER</u>

As the Court well knows, the sentencing guidelines are merely advisory. *United States v. Booker*, 543 U.S. 220 (2005).  The Court is free to set a sentence based upon an analysis of the factors set forth in Title 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant,  the need for the sentence imposed (1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment, (2) to afford adequate deterrence to criminal conduct, (3) to protect

the public from further crimes of the defendant, and (4), to provide the defendant with needed treatment. The statute instructs the district court to "impose a sentence sufficient, but not greater than necessary to comply with" these goals of sentencing. *Id.*

The Court gave recent guidance on the sentencing process in *Gall v. United States*, 552 U.S. 38, 128 S.Ct. 586 (2007), and *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558 (2007). These cases make clear that after calculating the guidelines range, the sentencing court must give the defendant and the government "an opportunity to argue for whatever sentence they deem appropriate." *Gall*, 552 U.S. at 49. The court should then consider all the Section 3553(a) factors, and should then fashion a sentence in light of them. In so doing, the court must not presume that the guidelines range is reasonable. *Id.* at 50.

*Booker*, *Gall*, and *Kimbrough*, and the ongoing development of the Guidelines' proper role, empower a court to select a sentence outside the confines of the guidelines where circumstances combine to make a guidelines sentence unreasonable.[1] Indeed, *Kimbrough* explicitly rejected an argument that the sentencing court must adhere blindly to a Congressional preference. There is clearly nothing about pornography cases that prevents the court from doing the same. *Booker*, while requiring the court to give respectful consideration to the

---

[1] Sentencing below the guideline range is not the same as seeking a downward departure from the guidelines. *See, e.g.*, *United States v. Arnaout*, 431 F.3d 994, 1003 (7th Cir. 2005) ("the concept of 'departures" has been rendered obsolete in the post-*Booker* world."); *United States v. Muhamed*, 459 F.3d 977, 986 (9th Cir. 2006)("We think the better view is to treat the scheme of downward and upward 'departures' as essentially replaced by the requirement that judges impose a 'reasonable sentence.' ").

Guidelines, "permits the court to tailor the sentence in light of other [section 3553(a)] concerns as well." *Booker*, 534 U.S. at 245.

Recent decisions from the Fourth Circuit and from district courts within the Circuit and elsewhere show just how willing the courts are to devise a "reasonable" sentence which is nevertheless well below the guidelines when the facts demand it.

A good example is *United States v. McClellen Walther*, No. PJM-06-0397 (District of Maryland, April 3, 2007). Walther pleaded guilty to possession of child pornography under 18 U.S.C. § 2252(a)(4)(B), though in its sentencing position paper, the government asserted that he could have been charged with receipt of child pornography. The facts supporting Walther's plea were quite different from the facts in Mr. Owen's case. Walther, using the Internet, responded to an undercover advertisement posted by the U.S. Postal Service and U.S. Immigration and Customs Enforcement offering videos. After receiving a catalog, and after e-mail correspondence in which Walther specifically sought "hard core pre-teen" videos, Walther was given a coded password which he used to place an order for seven such videos through the Internet. Those videos had been described in vivid terms in the catalog and contained explicit sexual acts including anal and oral sex with numerous children as young as seven. It was agreed in the Plea Agreement that some of the material was sadistic in nature. It was also agreed that the defendant possessed over 600 images of child pornography. Not mentioned in the Statement of Facts, but included in the Government's Sentencing Memorandum, was the fact that Walther's computer

and external media contained 3,701 images of child pornography. While a number of them had been deleted, 2,320 such images had been saved.

The parties in *Walther* agreed that the sentencing guidelines called for a sentence within the range of 78-97 months, and the government urged the court to impose a sentence within that range.  The defendant, however, argued that his years of good work as a pediatric cancer surgeon combined with the community service he performed post-arrest while on bond merited a sentence well below the guidelines.  Judge Peter Messitte agreed, imposing a sentence of 48 months, a sentence 37% and 5 levels below the guideline range despite the aggravated facts of the offense conduct.  The government did not appeal.

The Fourth Circuit has shown that it will not be quick to second guess a district court's decision to sentence well below the guidelines in child pornography cases. In *United States v. Pauley*, 511 F.3d 468 (4th Cir. 2007), for example, the government appealed a sentence of 42 months in a case in which Pauley was charged with possession of child pornography.  Pauley was a Junior High School teacher who had been approached by an eighth grade student who offered to sell him naked photographs of her. Pauley purchased the photos.  This happened twice more.  Then, the student offered to sell Pauley photographs of her having sex with another female student.  Pauley agreed, and provided her with a camera. He was later arrested and charged with possession of the pornographic photos.  Pauley's sentencing guidelines included enhancements for causing a minor to engage in sexually explicit conduct, for the involvement of a

victim under the age of 16, and for involvement of a victim under Pauley's supervision as a teacher.

After deducting points for acceptance of responsibility, Pauley's guidelines came to 78-97 months.  The district court, however, eventually varied from the guidelines and imposed a sentence of 42 months, based on the fact that (1) Pauley had been approached by the victim; (2) fewer than 24 photos were taken; (3) the victim's face did not appear in the photos; (4) Pauley displayed deep remorse; (5) Pauley had been a model citizen and a good father; (6) as a result of the conviction, Pauley lost his teaching certificate and his state pension; (7) Pauley agreed to a lifetime of supervised release; (8) no other child pornography was found in his house; and, (9) the counseling he would receive while incarcerated would rehabilitate him.

On appeal, and after reviewing the law in light of *Gall*, the Fourth Circuit found that "the district court's rationale for varying downward thirty-six months from the low-end of Pauley's Guideline range is reasonable and premised on the factors set forth in Section 3553(a)," identifying each of the factors the district court relied on as completely proper.  The Court rejected the government's arguments that the district court placed excessive weight on a single factor, and noted that even if it did, such was permissible under *Gall*.  The Court also rejected the notion that a substantial variance from the guidelines must be justified by extraordinary circumstances. 511 F.3d at 475.

The Fourth Circuit is not alone.  Another post-*Booker* child pornography case is *United States v. Wachowiak*, 496 F.3d. 744 (7th Cir. 2007).  Wachowiak

pleaded guilty to receipt of child pornography.  His computer contained hundreds of images of children, including children under the age of ten, some in bondage, as well as sadistic and masochistic images. His guidelines called for a sentence of 121-151 months. The district court's sentence of 70 months was upheld on appeal, based upon the district court's detailed explanation of the reasons that made such a sentence reasonable, including the defendant's lack of record, his genuine remorse, the fact that he never had inappropriate contact with a child, and his good character.

<u>A "REASONABLE SENTENCE"</u>

Given the foregoing decision, the key issue is how the Court should use its authority to craft a sentence for Mr. Owen that is "sufficient, but not greater than necessary to comply with," the statutory goals of sentencing.  With that in mind, we review first the factors set out in Section 3553(a)  The community, if aware of the facts before the Court, would believe that house arrest and supervised release disposition is appropriate and more than reasonable.

<u>NATURE AND CIRCUMSTANCES OF THE OFFENSE</u>

The defendant's conduct likely stands in stark contrast to the vast number of child pornography cases the Court has seen.  Rather, in his efforts to collect adult pornography, some amount of child pornography was swept up and then he deteriorated into maintaining what he found.  No money was paid to commercial producers and distributors of child pornography.  The images were those easily available on the internet, and were in many instances identifiable by law enforcement and related agencies as those unfortunately often found.

Moreover, there is nothing in this case that compares to what is routinely uncovered in aggravated child pornography cases.  Here, there was no attempt to contact children, there was no salacious chat with other adults in chat rooms, there was no other child pornography found in a search of the defendant's home, there were no meetings arranged, there was no travel to meet up with a child. To the contrary, there is only the fact that the defendant knew he obtained child pornography while searching for legal adult pornography.  He is responsible for that monumental mistake.

## NEED FOR SENTENCE TO REFLECT THE SERIOUSNESS OF THE CRIME, PROMOTE RESPECT FOR THE LAW, PROVIDE JUST PUNISHMENT

Mr. Owen and the undersigned are well aware of the drastic sentencing decision they are asking the Court to make.  There is no indication here that any general member of the community, aware of all the information the Court has before it, including the horror of those abused in the making and putting on the internet of child pornography to be viewed and collected, would be offended by a supervised release disposition with proper conditions in place to ensure the ongoing safety of the community.  The fact of conviction for a man of Mr. Owen's history, placement on the public sex offender registry, and destruction of his sense of self is enough, and the community would see that as being the case here.

## NEED FOR THE SENTENCE TO PROTECT THE PUBLIC

The crime here is now almost a year old. Mr. Owen has proven in that time that he is no danger to the public.  The government did not charge or supervise Mr. Owen for months after the search and his confession.  Moreover,

the crime here was not one of reaching out to abuse children.  Most importantly the proof of protection of the community is shown by the police polygraph results and re-enforced by the rehabilitation efforts by Mr. Owen.

NEED TO PROVIDE TREATMENT AND EDUCATION

The defendant needs ongoing treatment for his physical and mental health issues.  Those issues have been and will continue to be addressed in the community at Mr. Owen's cost, as has occurred up to the time of incarceration.  It is without question that medical treatment will be ongoing while incarcerated, but that care may not be all that it should be or would be required to repair Mr. Owen's psychological health.  Mr. Owen has critical and multiple health problems.  Managing those problems in a local jail setting is one thing, but a longer sentence and the burden placed upon the Bureau of Prisons for maintaining this man's health may not meet the needs for fully rehabilitating him, and, moreover, it would impose a substantial cost on the community.  Without question, the sentence sought by the government predictably will result in the ongoing decline in health of this man, the reasonable and tragic outcome of which may be his death while in the custody of the Bureau of Prisons.  However, his offense conduct and total history make such a grave result unbefitting and unreasonable.

FINANCIAL STATUS AND FINE

While the PSR indicates the ability to pay a fine, there are also other financial factors to consider.  The amount of cash flow indicated in the PSR does not appear to be accurate.  The family lives off of Mr. Owen's pension.  While he

does have some stock, it is from an inheritance and the good fortune of growth of that company.  But the Owen household costs well over $5,000.00 a month to maintain, and the current spending habits impose an additional monthly financial burden of $4,000.00.  While there is the inheritance stock asset, beyond the Owen home there is little else.  Beyond that, restitution is being addressed separately with counsel for one of the identified victims of the pornography found on the computer and funds are better directed there than toward a fine.

RESTITUTION

While generally there is no order of restitution in such cases, as the Court is aware there are requests for restitution from known victims.  Counsel for Mr. Owen is attempting to come to a resolution of such demands and will update the Court and report progress in that regard before or at the time of sentencing.

OTHER 18 U.S.C. § 3553 CONSIDERATIONS AND INFORMATION

Filed with this position paper are letters from family and friends who know Mr. Owen well.  Those letters are remarkable in their candor, but also the history revealed about this fine man with his unique background.  There is a substance to what is written that supports and reflects the substance of the man.

We submit that all these reasons – the Section 3553(a) factors, as well as the other factors listed – are sound reasons to treat this particular case and this particular defendant in a way which truly takes account of his actual conduct and punishes him with a sentence that is "sufficient, but not greater than necessary."

A sentence well below the bottom of the guidelines, to consideration of a probationary sentence, does that.

SEX OFFENDER REGISTRATION

The Court will also demand, as required by law and as a condition of the defendant's supervised release, to order that Mr. Owen register as a sex offender under Virginia's Sex Offender and Crimes Against Minors Registry Act, Code of Virginia 1950, as amended, Section 9.1-900, *et seq*.  Mr. Owen being on the registry is not needed by this record for the protection of the community. Yet it will be ordered as required by law. Therefore, the sex offender registry will be additional punishment, humiliation, and ongoing personal damage imposed on Mr. Owen for his conduct.

DESIGNATION AND SELF-SURRENDER

Counsel requests that the Court recommend that the Bureau of Prisons designate Mr. Owen to the appropriate facility at the camp level facility and that he be authorized to be released to self-surrender, if a sentence to serve beyond home incarceration is called for.    Mr. Owen has been one hundred percent compliant with Pre-Trial Service requirements and will continue to do so if released to self-report in the event of a sentence to serve.  In the event of an ongoing sentence, there is significant cause for concern about Mr. Owen's health during transfers to different facilities during the designation process.  Self-surrender removes that problem. In the meantime, Mr. Owen requests, and it is believed that Pre-Trial Services concurs in this request, that Mr. Owen be

allowed to leave his Prince William County home and stay with his son Michael in Maryland to assist in removing stress and difficulties at the Owen home.

<u>CONCLUSION</u>

This case is unique in many respects, and it deserves imposition of a sentence uniquely tailored to its circumstances.  Primary among those is the limited conduct, the case history, Mr. Owen's commitment to and support of his country and family, and immediate acceptance of responsibility.  His health and age are certainly relevant factors to be considered, as well.

The possession of child pornography is a serious crime with real victims.  But, it is also true that each crime and each offender is different.  Mr. Owen did not set out to collect child pornography.  He did not sell it or trade it.  He never acted inappropriately with any child.  The police investigated that fully, as did Child Protective Services.

That said, James Owen fully recognizes the harm caused by possession of child pornography.  He understands the continuing harm caused to the child victims. Mr. Owen is haunted, mortified, and embarrassed by his conduct.

Counsel respectfully urges this Court to fashion a sentence which recognizes the adequate punishment already imposed and that which will be ordered under a supervised release and probation disposition given the unique circumstances present in this case.   It is respectfully submitted that a probationary disposition, while perhaps unusual, is the just and reasoned result given the nature of the case and the history and background of the defendant.

Respectfully Submitted,
JAMES OWEN,

- 20 -

By Counsel

Counsel for the Defendant:

_____/s/_____
Peter D. Greenspun
State Bar I.D. #18052
Counsel for the Defendant
Greenspun Shapiro PC
3955 Chain Bridge Road
Second Floor
Fairfax, Virginia 22030
(703) 352-0100
Fax: 703-591-7268
Email: pdg@greenspunlaw.com

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 25th day of September, 2012, I will electronically file the foregoing with the Clerk of the Court using CM/ECF, which will then send a notification of such filing (NEF) to the following:

Maureen Cain
Counsel for the United States
2100 Jamieson Avenue
Alexandria, Virginia   22314


_____/s/_____
Peter D. Greenspun
Counsel for the Defendant
State Bar I.D. #18052
Greenspun Shapiro PC
3955 Chain Bridge Road
Second Floor
Fairfax, Virginia 22030
(703) 352-0100
Fax: 703-591-7268
Email: pdg@greenspunlaw.com